UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

U.S. Bancorp,  Civil No. 11-2621 (DWF/AJB)

    Plaintiff,

v.  **MEMORANDUM OPINION AND ORDER**

John D. Sternfield,

    Defendant and Third-Party Plaintiff,

v.

Piper Jaffray & Co., d/b/a U.S.
Bancorp Piper Jaffray, Inc. and
U.S. Bancorp Piper Jaffray
ECM Fund I, LLC,

    Third-Party Defendants.

_____

Kristine K. Nogosek, Esq., and Truman W. Schabilion, Esq., Stein & Moore PA, counsel for Plaintiff.

Craig A. Buske, Esq., and David L. Shulman, Esq., Law Office of David L. Shulman PLLC, counsel for Defendant and Third-Party Plaintiff.

Kevin C. Riach, Esq., and Rachna B. Sullivan, Fredrikson & Byron, PA, counsel for Third-Party Defendants.

_____

## INTRODUCTION

    This matter is before the Court on a Motion to Dismiss the Amended Third-Party Complaint or, in the Alternative, for a More Definite Statement (Doc. No. 24) brought by Third-Party Defendants Piper Jaffray & Co. ("Piper Jaffray") and U.S. Bancorp Piper

Jaffray ECM Fund I, LLC ("the Fund").  For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Third-Party Plaintiff John D. Sternfield ("Sternfield") worked as an investment banker for Piper Jaffray from December 15, 1995 until May 2002.  (Doc. No. 21, Am. Third-Party Compl. ¶ 7.)  He served as Head of Venture Capital Services before receiving a promotion to Group Head of Communications and Computing Investment Banking.  (*Id.*)  In 2000, sometime before Sternfield's promotion to Group Head of Communications and Computing Investment Banking, Sternfield invested in the Fund.  (*Id.* ¶ 8.)  To finance his capital contribution to the Fund, Sternfield executed a Loan and Security Agreement ("Loan Agreement") with U.S. Bancorp on February 19, 2000.  (*Id.* ¶ 16.)  U.S. Bancorp was, at that time, the sole owner of Piper Jaffray and provided a "commercial," non-public loan to Members for the purpose of investing in the Fund.  (*Id.* ¶ 15.)  The Fund's investors were all Piper Jaffray employees, and Sternfield alleges that participation in the Fund was a job duty or expectation.  (*Id.*)  Sternfield also claims that, contrary to its stated purpose of "purchasing, selling and investing in 'securities'" (Doc. No. 27, Riach Decl. ¶ 2, Ex. A ¶ 6(a)), Piper Jaffray intended to use the Fund to secure underwriting business.  (Am. Third-Party Compl. ¶ 9.)

Sternfield claims that superior managers at Piper Jaffray expressed expectations that he invest in the Fund.  (*Id.* ¶ 8.)  He alleges that Paul Karos, Piper Jaffray's Head of Equity Capital Markets, told Sternfield that he should invest "his entire annual bonus" in the Fund and that, as "one of Piper Jaffray's leading bankers and a candidate for Group

2

Head of Communications and Computing Investment Banking, Sternfield was expected to lead by example and that meant investing in the ECM Fund, particularly since Sternfield was being considering [sic] for that new position." (*Id.*)  Sternfield alleges that Paul Grangaard, Sternfield's supervisor and Piper Jaffray's Co-Head of Investment Banking, told him that "investing in the ECM Fund was the way that he could insure [sic] his future with Piper Jaffray." (*Id.*)  And, finally, Sternfield alleges that Tom Schnettler, Co-Head of Investment Banking and Co-Manager of the Fund, told Sternfield that "not only should he invest as much as possible in the ECM Fund, but that he should borrow as much as possible from U.S. Bancorp . . . ." (*Id.*)  Sternfield claims that his superiors never told him that investment in the Fund was optional.  (*Id.*)

The Fund's Member Control Agreement ("MCA") included provisions to cut off a Member's participation in the investment if Piper Jaffray terminated the Member's employment for cause or if the Member sought work with one of Piper Jaffray's competitors.  (*Id.* ¶¶ 13, 14; Riach Decl. ¶ 2, Ex. A ¶ 7.)  The MCA also required all Members to maintain an account with either U.S. Bancorp or Piper Jaffray.  (Am. Third-Party Compl. ¶ 17; Riach Decl. ¶ 2, Ex. A ¶ 7(a).)

Additionally, the MCA included several provisions regarding the role of the Managing Members.  Notably, the Managing Members had "authority to withdraw funds" from each Member's financing account.  (Riach Decl. ¶ 2, Ex. A ¶ 7(a).)  The Managing Members were also entitled to a fee consisting of 20% of profits from time to time as determined by the Fund's management committee.  (*Id.* ¶¶ 9(a), 10, 11.)  Although the Managing Members held significant authority over the Fund's operations,

3

the MCA required them to "exercise reasonable skill and care and their best business judgment." (*Id.* ¶ 13(f).) The MCA also obligated the Managing Members to "act at all times in what they deem[ed] to be the best interests of the Members . . . ." (*Id.*)

The Loan Agreement between Sternfield and U.S. Bancorp bestowed complete authority over the financing upon the Fund's Managing Members. (Am. Third-Party Compl. ¶ 17; Doc. No. 30, Shulman Decl. ¶ 2, Ex. 1 ¶ 7.) Although the Managing Members were not signatories to the Loan Agreement, only the Managing Members could draw upon Sternfield's line of credit to finance his contributions to the Fund. (Am. Third-Party Compl. ¶ 17; Shulman Decl. ¶ 2, Ex. 1 ¶ 4.) The agreement specified that the financing could only be used to invest in the Fund. (Am. Third-Party Compl. ¶ 17; Shulman Decl. ¶ 2, Ex. 1 ¶ 3.)

The Fund declared profits in 2000 and 2001, allowing its Managing Members to withhold a 20% share of the profits pursuant to the MCA. (Am. Third-Party Compl. ¶ 26.) In November 2002, however, the Managing Members notified the Members "that the Fund might not be returning all capital to investors." (*Id.*) By the time Sternfield's loan from U.S. Bancorp matured on December 31, 2007, the Fund had lost 32% of the investment capital, and Sternfield's share of that loss amounted to approximately $235,000 of the $700,000 loan amount. (*Id.* ¶ 24.) Sternfield claims that he lost an additional $250,000 in capital—his 1999 bonus, which he had invested in the Fund. (*Id.*)

U.S. Bancorp initiated the underlying suit in Hennepin County District Court against Sternfield to recover the outstanding debt under the Loan Agreement of $235,897.24, plus interest. (Doc. No. 1, Compl. ¶¶ 3–5.) Sternfield removed the case to

this Court (Doc. No. 1) and filed a Third-Party Complaint against Piper Jaffray and the Fund, seeking indemnification. (Doc. No. 3, Third-Party Compl.) Sternfield filed an Amended Third-Party Complaint on November 28, 2011 (Am. Third-Party Compl.), and the Third-Party Defendants filed the present motion to dismiss on December 5, 2011 (Doc. No. 24).

The Amended Third-Party Complaint asserts a single claim of indemnity against both Third-Party Defendants on the following grounds: (1) Minn. Stat. § 181.970; (2) the terms of the Fund's MCA; (3) Minn. Stat. § 181.031; (4) breach of fiduciary duty; (5) fraudulent inducement; and (6) unjust enrichment. (Am. Third-Party Compl. ¶ 31.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**II.    Motion to Dismiss**

Third-Party Defendants argue that all six of Sternfield's theories of indemnification are deficient and that the Court should dismiss the Amended Third-Party Complaint pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.  The Court finds that Sternfield has asserted a valid claim for indemnification; thus, the motion to dismiss is properly denied.  Because the Court concludes that Sternfield has alleged sufficient factual support for his indemnification claim under Minnesota Statute Section 181.970, and pursuant to the terms of the MCA, or, alternatively, as a result of a breach of fiduciary duty, the Court need not reach Sternfield's other theories of recovery.

### A.     Minnesota Statute § 181.970

Sternfield argues that Minnesota Statute Section 181.970 requires Piper Jaffray, as his employer, to indemnify him against U.S. Bancorp's claims because he was performing a required employment duty by participating in the Fund.  (Am. Third-Party Compl. ¶ 31; Doc. No. 29, at 17–21.)  Piper Jaffray argues that it did not require Sternfield to invest in the Fund, and that Sternfield's participation in the U.S. Bancorp financing was not a condition of his employment.  (Doc. No. 26, at 15.)

Minnesota Statute Section 181.970 provides:  "An employer shall defend and indemnify its employee for civil damages, penalties, or fines claimed or levied against the employee, provided that the employee . . . was acting in the performance of the duties of the employee's position."  Minn. Stat. § 181.970.  In his Amended Third-Party Complaint, Sternfield claims that three "superior" employees of Piper Jaffray told him that they expected him to participate in the Fund, that an investment would secure his future employment with the company, and that "he should borrow as much as possible from U.S. Bancorp" to finance the investment.  (Am. Third-Party Compl. ¶ 8.)

Specifically, Sternfield alleges that Paul Karos, Tom Schnettler, and Paul Grangaard called him to say that "they expected him to invest in the Fund" but that they "never stated that investing in the ECM Fund was optional for Sternfield."  (*Id.*)  In the phone conversation between Karos and Sternfield, Karos explained that the company expected Sternfield to "lead by example and that meant investing" his entire anticipated annual bonus in the Fund.  (*Id.*)  Sternfield also alleges that Karos told him that it was especially important for Sternfield to invest since he was a candidate for promotion to

7

Group Head of Communications and Computing Investment Banking. (*Id.*) Sternfield further claims that Paul Grangaard represented that Sternfield "could insure [sic] his future with Piper Jaffray" by investing in the Fund. (*Id.*) Sternfield also alleges that a third superior, Tom Schnettler, insisted that Sternfield "should borrow as much as possible from U.S. Bancorp." (*Id.*)

Additionally, Sternfield points to several provisions of the MCA to further allege that participation in the Fund was a job requirement. (*Id.* ¶¶ 13, 14.) First, the MCA reduced an investor's interest in the Fund to zero immediately upon termination (for cause) from employment with Piper Jaffray. (Riach Decl. ¶ 2, Ex. A ¶ 17(a).) Second, the MCA included a non-compete provision, pursuant to which an investor would forfeit profits due after the date of termination if the investor began working for one of Piper Jaffray's competitors. (*Id.* ¶ 17(b).)

Finally, Sternfield alleges that U.S. Bancorp provided special financing in order for Piper Jaffray employees to participate in the Fund. (*Id.* ¶ 15.) He claims that this financing was not available to the public and that it existed "[p]ursuant to Piper Jaffray's requirement that . . . employees borrow funds to invest in the ECM Fund . . . ." (Am. Third-Party Compl. ¶ 15.)

The Court finds that these factual allegations, when taken as true with all reasonable inferences resolved in favor of Sternfield, raise a serious question as to whether participation in the Fund was a job requirement. Therefore, the Court concludes

that Sternfield has stated a plausible claim for relief against Piper Jaffray under Minnesota Statute Section 181.970.[1]

## B. Terms of the MCA

Sternfield also argues that the terms of the MCA require the Fund to indemnify him against U.S. Bancorp's claim because the debt relates to the Fund's business. (Am. Third-Party Compl. ¶¶ 21, 31; Doc. No. 29, at 17–21.) The Fund argues that Sternfield has not properly alleged that the circumstances surrounding the loan relate to the Fund's business within the meaning of the indemnity provision in the MCA. (Doc No. 26, at 11.)

The MCA's indemnity provision states:

> The Company shall indemnify each of the Members . . . from and against all liabilities and expenses . . . reasonably incurred by any of them in connection with the defense or disposition of any action . . . in which any of them may be involved . . . , while a Member or thereafter, which arise out of or in any way relate to being or having been a Member . . . provided that, if such person is a Member, such person shall be so indemnified only with respect to any such action, suit or proceeding which relates to the business of the Company (as distinguished from the business or tax position of the Member).

---

[1] The Third-Party Defendants argue that the applicable statute of limitations bars Sternfield's claim under Minnesota Statute Section 181.970. Minnesota Statute Section 541.05 imposes a six-year limitation period for any liabilities created by statute. The clock does not begin to run on the limitation period, however, until the statutory claim for indemnity accrues. *E.S.P., Inc. v. Midway Nat'l Bank of St. Paul*, 447 N.W.2d 882, 885 (Minn. 1989) ("The contingency giving rise to the indemnity claim does not occur until loss is experienced by the indemnitee."); *Altermatt v. Arlan's Dep't Stores*, 284 Minn. 537, 538, 169 N.W.2d 231, 232 (1969)). Here, Sternfield's claim did not accrue until, at the earliest, December 31, 2007—the date on which the debt to U.S. Bancorp became due and on which U.S. Bancorp could have first filed a suit to recover the debt. (*See* Shulman Decl. ¶ 2, Ex. 2 ¶ 3.) Sternfield filed his Third-Party Complaint on September 14, 2011, well within the statutory period.

(Riach Decl. ¶ 2, Ex. A ¶ 26(a).)  Sternfield asserts that U.S. Bancorp's loan to him, the subject of the claim for which he seeks indemnity, related entirely to the business of the Fund.  (Doc. No. 26 at 22.)  U.S. Bancorp purportedly provided the loan solely to facilitate Piper Jaffray employees' investments in the Fund, and the Loan Agreement between Sternfield and U.S. Bancorp makes clear that all advances under the agreement will be used only to purchase membership interests in the Fund.  (Am. Third-Party Compl. ¶ 15; Shulman Decl. ¶ 2, Ex. 1 ¶ 3.)  The Loan Agreement also gave the Fund (a third-party) and its Managing Members complete control over the financing; Sternfield himself had no authority over the line of credit drawn under his name.  (Am. Third-Party Compl. ¶ 17; Shulman Decl. ¶ 2, Ex. 1 ¶ 4.)  Specifically, the agreement states: "Advances will be made only following notice from the Managing Member specifying the amount and date of such advance.  The Borrower hereby irrevocably authorizes the Lender to make any such advance requested by the Managing member, regardless of any contravening instruction by the Borrower."  (Shulman Decl. ¶ 2, Ex. 1 ¶ 4.)  The Loan Agreement also directed distributions from the Fund directly to U.S. Bancorp as payments on the loan.  (*Id.* ¶ 7; Am. Third-Party Compl. ¶ 17.)

Further, the MCA required each investor in the Fund to maintain an account with either U.S. Bancorp or Piper Jaffray (a wholly owned subsidiary of U.S. Bancorp at the time, and the investors' employer).  (Am. Third-Party Compl. ¶ 17; Riach Decl. ¶ 2, Ex. A ¶ 7(a).)  Sternfield also points out that U.S. Bancorp considered the loan to be

"commercial," suggesting that all parties to the arrangement did not consider the debt to be "personal" in nature. (*See* Am. Third-Party Compl. ¶ 15.)

Each of these allegations stems from Sternfield's principal argument that the U.S. Bancorp loan, the Fund's use of the financing, and the Fund's inability to return enough capital to permit Sternfield to repay the loan, all relate to the Fund's business within the meaning of the indemnity provision in the MCA. (Doc. No. 29, at 22–23.) Accepting these factual allegations as true, and construing all reasonable inferences in favor of Sternfield, the Court finds that Sternfield has stated a plausible claim for indemnification from the Fund pursuant to the terms of the MCA.

### C. Breach of Fiduciary Duty

Sternfield further claims that he is entitled to indemnification from the Fund because its Managing Members breached their fiduciary duty by engaging in self-dealing and failing to act in the Members' best interests. (Am. Third-Party Compl. ¶¶ 22, 31; Doc. No. 29, at 23–28.) The MCA required the Managing Members to "exercise reasonable skill and care and their best business judgment" and to "act at all times in what they deem[ed] to be the best interests of the Members." (Riach Decl. ¶ 2, Ex. A ¶ 13(f).) Sternfield alleges that the Managing Members failed to exercise reasonable skill and care by investing Member funds "in excessively high-risk, non-diversified investments primarily for the purpose of obtaining potential securities underwriting work for Piper Jaffray." (Am. Third-Party Compl. ¶ 23.) He also alleges that the Managing Members declared profits to take management fees "when the actual performance of the

investments indicated that the ECM Fund would not be returning all capital to its members." (*Id.* ¶ 26.)

Because the allegations in the Amended Third-Party Complaint, when accepted as true, raise a plausible claim that the Managing Members of the Fund breached their fiduciary duty to Fund Members, the Court finds that Sternfield has raised a plausible claim for indemnification against the Fund on this basis as well.

## CONCLUSION

Sternfield has pleaded sufficient facts to survive the present motion to dismiss. The allegations in the Amended Third-Party Complaint, when taken as true, permit the reasonable inference that Piper Jaffray required Sternfield to participate in the Fund as a condition of his employment. Sternfield identifies specific communications in which his superiors at Piper Jaffray expressed their expectation that Sternfield invest in the Fund, citing his position and standing with the company. Likewise, Sternfield points to several terms of the U.S. Bancorp loan documents that raise a reasonable inference that the loan itself was related to the Fund's business. Sternfield further alleges specific facts that, when taken as true, advance an ostensible claim for indemnification as a result of a purported breach of fiduciary duty. He thus states a plausible claim for relief against the Fund. Because the Court finds that Sternfield has properly pleaded an indemnity claim against each of the Third-Party Defendants under at least one of the theories discussed

above, the Court need not reach Sternfield's alternative theories of recovery.  For the reasons discussed herein, Third-Party Defendants' motion to dismiss is rightfully denied.[2]

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Third-Party Defendants' Rule 12 Motion to Dismiss the Third-Party Amended Complaint or, in the Alternative, for a More Definite Statement (Doc. No. [24]) is **DENIED**.

2. Third-Party Defendants' Rule 12 Motion to Dismiss the Third-Party Complaint (Doc. No. [15]) is **DENIED AS MOOT**.


Dated:  March 30, 2012                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge

---

[2] In the alternative, Third-Party Defendants move for a more definite statement pursuant to Rule 12(e).  Because the Court finds that the Amended Third-Party Complaint has met the Rule 8 pleading requirements, a more definite statement of the claim is unnecessary.  *Sopkin v. Mo. Nat'l Life Ins. Co.*, 222 F. Supp. 984, 985 (8th Cir. 1963) ("Compliance with Rule 8 should not expose a party to a motion under Rule 12(e)."). The motion for a more definite statement is also denied.